IDA M. FLEMING *vs.* KATAHDIN PULP & PAPER COMPANY.

Penobscot.     Opinion June 12, 1899.

*Disseizin.     Co-Tenant.     Tax-Deeds.     Statutory Notice.     Conversion.     R. S.,*
*c. 95, §§ 5, 18, 19.*

One who, under a claim of sole ownership of a lot of wild land, has, for over twenty years, made partial clearings on portions of the lot, but whose occupation has been somewhat casual and intermittent, connected a good deal with lumbering operations, does not thereby effect a disseizin of the true owners who stand in relation of co-tenants with him; nor is his claim of title made any better by tax-deeds from the state or county which are defective and thereby void.

The plaintiff acquired title by deed to one-sixteenth in common and undivided of a tract of wild land while the other owners, or persons claiming under them, were carrying on a lumbering operation on the tract, without permission of the one-sixteenth owner or any statutory notice to him, a portion of the cutting having been before the date of the plaintiff's deed and a portion afterwards, but all before the deed was recorded, the deed containing a clause that the grantor "assigned, sold and conveyed to the grantee, all his rights and claims for stumpages for trespasses on and from said land from October 1888." *Held;* that the deed and assignment in it gave to the plaintiff title to one-sixteenth in common of all the lumber cut during the operation; that it was immaterial whether the deed was recorded or not; and that the plaintiff can maintain an action of trover for his one-sixteenth interest in the logs against the defendants who purchased the same and (evidently) converted them into pulp before the action was brought.

ON REPORT.

This was an action of trover brought to recover the value of six thousand pieces of spruce pulp-logs which were cut upon Lot No. 13, in Woodville Plantation, during the lumber season of 1895. The evidence in the case shows that the logs were cut by one W. L. Hughes for Butterfield and Gates of Lincoln, and by Butterfield

and Gates sold to the defendant company. While the action is brought to recover the value of personal property, it involves the title to the lot of land upon which the logs were cut. The action came on for trial at the October term, 1897, and after the evidence for the plaintiff was in, the defendant's counsel moved for a non-suit upon the ground that the plaintiff had shown no cause of action: 1. Because there was no evidence that the plaintiff owned the logs. 2. Because if she had any interest in the logs under her deed, it was an undivided interest and she owned them in common with the defendant company, which company had committed no act of conversion.

The other facts appear in the opinion.

*M. Laughlin*, for plaintiff.

Counsel cited: *Hazen* v. *Wight*, 87 Maine, 233; *Maddox* v. *Goddard*, 15 Maine, 218; 2 Addison on Torts, § 1289; *Baker* v. *Whiting*, 3 Sumner, 475; *Freeman* v. *Underwood*, 66 Maine, 229; *Wing* v. *Milliken*, 91 Maine, 387; *Carpenter* v. *Lingenfelter*, 32 L. R. A. 422; *Waller* v. *Bowling*, 12 L. R. A. 261; 2 Greenl. Ev. § 636; 1 Chitty on Pleading, p. 66; 17 Am. & Eng. Ency. of L. p. 600; *McGee* v. *McCann*, 69 Maine, 79; Jones Law of Real Property in Conveyancing, § 1928.

*E. C. Ryder*, for defendant.

Timber trees cut down and lying untrimmed upon the land, will pass by a deed of the premises, if there is no reservation. But, after they have been cut into logs they do not pass by deed unless included in it, or unless it is the intention of the parties that they should. *Brackett* v. *Goddard*, 54 Maine, 309–313; *Cook* v. *Whitney*, 16 Ill. 481.

Giving the description in the deed its full force and meaning, it conveys no interest in any property for the value of which an action in trover will lie. It at the most simply assigns the right to recover the price of logs taken off the lot, either by permission or otherwise. It simply assigns the right to recover of parties who have trespassed upon the lot, or the right to recover the price to be paid for the right of operating upon it.

"Stumpage means the sum by agreement to be paid an owner

for trees standing (or lying) upon his land, the party purchasing being permitted to enter upon land and to cut down and remove the same. In other words, it is the price paid for a license to cut." Per PETERS, C. J., in *Blood* v. *Drummond*, 67 Maine, 476.

In order to maintain the action, the deed must have conveyed property in the logs, for, in order to maintain an action of trover for property, the plaintiff must have been in possession of the goods, or he must have such a property in them as draws to it the right of immediate possession.

Counsel also cited: *Haskell* v. *Jones*, 24 Maine, 222; *Burke* v. *Savage*, 13 Allen, 408; *Ekstrom* v. *Hall*, 90 Maine, 186; *Ames* v. *Palmer*, 42 Maine, 197; *Winship* v. *Neale*, 10 Gray, 382; *Clark* v. *Rideout*, 39 N. H. 238; *Hunt* v. *Holton*, 13 Pick. 216; *Foster* v. *Gorton*, 5 Pick. 185; *Hart* v. *Hyde*, 5 Vt. 238.

Tax deeds: *Griffin* v. *Creppin*, 60 Maine, 270; *Larrabee* v. *Hodgkins*, 58 Maine, 412; *Greene* v. *Lunt*, 58 Maine, 518; *Bank* v. *Parsons*, 86 Maine, 514; *Straw* v. *Poor*, 74 Maine, 53; *Briggs* v. *Johnson*, 71 Maine, 235.

A deed of land conveys no greater title than the grantor has. *Litchfield* v. *Ferguson*, 141 Mass. 97. Deeds acknowledged and recorded operate as livery of seizin only when the grantor has good right and lawful authority to convey. Trowbridge, J., on "Registering of Deeds and Conveyances under Provincial Statute of Massachusetts Bay," 3 Mass. 574 & 575; *Bates* v. *Norcross*, 14 Pick. 224–231; *Goodwin* v. *Hubbard*, 15 Mass. 212; *Blethen* v. *Dwinel*, 34 Maine, 134; *Roberts* v. *Richards*, 84 Maine, 1.

Adverse possession: *Chadbourne* v. *Swan*, 40 Maine, 260; *Sch. Dist.* v. *Benson*, 31 Maine, 381; *Hudson* v. *Coe*, 79 Maine, 83; *Chandler* v. *Wilson*, 77 Maine, 76; *Brown* v. *King*, 5 Met. 173; *Heemans* v. *Schmaltz*, 10 Biss. (U. S.) 323; *Huntington* v. *Whaley*, 29 Conn. 391; *Brown* v. *Hanauer*, 48 Ark. 277; *Core* v. *Faupel*, 24 W. Va. 238; *Stillwell* v. *Foster*, 80 Maine, 333; *Sawyer* v. *Kendall*, 10 Cush. 244; *Hollingsworth* v. *Sherman*, 36 Minn. 152.

One partner or joint tenant of a chattel cannot maintain trover against his co-tenant for any interference with his right of possession, unless there has been a destruction of the chattel or some-

thing equivalent to it.    *Wickham* v. *Wickham*, 2 K. & J. 496;
*Mayhew* v. *Herrick*, 62 E. C. L. 929; *Bleaden* v. *Hancock*, 4 C.
& P. 152; *Fennings* v. *Granville*, 1 Taunt. 241.

Trover cannot be brought by one tenant in common against
another tenant in common for cutting and selling hay on the land
without his permission.    *Jacobs* v. *Seward*, L. R. 4 C. P. 328;
*Gilbert* v. *Dickerson*, 7 Wend. 449; *Dain* v. *Cowing*, 22 Maine,
347; *Wheeler* v. *Wheeler*, 33 Maine, 347; *Weld* v. *Oliver*, 21 Pick.
559; *Whitmore* v. *Alley*, 46 Maine, 428; *Kilgore* v. *Wood*, 56
Maine, 150–155; *Estey* v. *Boardman*, 61 Maine, 595; *Carter* v.
*Bailey*, 64 Maine, 458–464; *Richards* v. *Wardwell*, 82 Maine, 345.

SITTING:  PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL,
STROUT, SAVAGE, JJ.

PETERS, C. J.   The plaintiff sues to recover against the defend-
ants in an action of trover for the conversion of six thousand pieces
of spruce pulp-logs cut in the winter of 1895–6 upon lot 13 in the
town of Woodville in Penobscot county.   She claims to recover
according to her title to the premises upon which the lumber was
cut, and while she supposed at the time of her purchase that she
was obtaining a title to the whole of lot 13, or to a major part of
it, it turns out, according to the admission of her counsel, that she
became an owner by her deed of only one-sixteenth in common and
undivided of the tract.

To be sure there is considerable evidence in the case showing
some patches of cuttings and partial clearings by the plaintiff's
predecessors under claims of ownership during the last twenty or
more years, but such acts were somewhat casual and intermittent,
consisting a good deal of lumbering operations, and were ineffec-
tual to establish any title by disseizin of the true owners; especial-
ly when such owners stood in the relation of co-tenants with the
persons in possession.

The plaintiff also submits in evidence certain tax-deeds from the
state and county as supporting her assumed title to the whole lot,
but they are on their face clearly void.

The defendants contend that the plaintiff has not even a one-

sixteenth interest in the lumber in question, or in the stumpage on it, because the lumber was in part cut, as they allege, before she received her deed, and at all events wholly cut long before her deed was recorded. The deed was delivered January 2, 1896, and recorded May 25, 1896. The operation on the tract commenced in November, 1895, and terminated on the last of January, 1896. We do not see that it is at all material when the deed became recorded, or that it was of any concern to the defendants, or to the persons of whom they made their purchase, whether the deed was ever recorded or not, inasmuch as they represented no right or title dependent upon the deed. The question is who was the owner in fact at the time of the cuttings.

From the statement thus far it appears that the plaintiff's ownership would attach to only such portion of the lumber as was cut in the month of January, 1896, and not to the portion cut prior to that time. But appreciating that point when the conveyance was taken the plaintiff insisted upon a clause in the deed to cover the operation and these words were inserted by her grantor: " I also hereby assign, sell and convey to her all my rights and claims for stumpage for trespasses on or from said land from October, 1888." Consistently with this construction was the verbal talk of the parties at the time. None of the lumber had been removed from the land when the deed was delivered, and having been wrongfully cut either because the operators were naked trespassers, or because they were acting as owners who had not given the statutory notice to co-tenants required by § 5 of ch. 95, R. S., in either case the language of the assignment was sufficient to preserve to the plaintiff an interest in all the lumber cut equivalent to her ownership in the land, whether cut before or after the deed.

It does not appear by what right or title those carrying on the lumbering operation acted. But it does appear that the defendants bought the lumber in good faith of their neighbors, the firm of Butterfield & Gates, who by their servants and employees conducted the operation in the woods; and it nowhere appears, even upon suggestion merely, that the plaintiff or her grantor consented to the operation or received any statutory or other notice of it.

Upon these facts the counsel for the plaintiff sets up the claim that there was such an infringement of his client's rights as to authorize her to recover of the defendants in this action the entire value of all the logs cut, or else the value of her proportion of them, notwithstanding the defendants at the date of plaintiff's writ may not have converted the logs to their own use by a sale or the manufacture of them.

We hardly see how such a right exists in the present facts.  If the operation was carried on by co-tenants, an action inures to the plaintiff to sue for treble damages under § 5, ch. 95, R. S.   And if carried on by strangers without any possession or title, by mere intruders, then a right is conferred, by sections 18 and 19 of the same chapter, upon any tenant in common to institute an action of trespass for the benefit of all the owners, in which the plaintiff can obtain execution for her share of the injury, the other co-tenants having a right jointly or severally to obtain theirs by scire facias on the common judgment to be rendered in behalf of all the co-tenants.   In the case of a trespass by cutting down trees by a stranger the owners would no doubt have a right to seize the lumber into their possession, or they could enjoin the trespass by injunction in a chancery proceeding.   And there may be even other remedy for such a flagrant invasion and abuse of property.

But the plaintiff does not see fit to avail herself of any of those remedies, but brings an action of trover for the conversion of her personal property such as may belong to her as a one-sixteenth owner of the land from which the property was taken.   And if the defendants or those under whom the defendants claim were mere intruders and trespassers upon the lot in question, operating without any title whatever or claim of title, we are not prepared to say that the plaintiff would not be entitled to maintain her action at once for her share of the converted property.   But there is nothing in the case authorizing us to infer that the defendants were naked trespassers.   They appear to be in possession under a claim of right.   As the facts relied on by the defense were not reached, the case going up on the plaintiff's proofs, all the actual conditions are not perhaps presented to us.

The remaining question is whether at the date of the writ (March 2, 1897,) the defendants, who perhaps may be properly regarded as owners of fifteen-sixteenths of the logs in common and undivided, had converted the plaintiff's share of the property by converting the logs into pulp or other manufactures. We think the evidence sufficiently proves a conversion.

The defendants' pulp mill is situated in Lincoln, fifty miles above Bangor on Penobscot river. These logs were run down to Lincoln in rafts and not singly, and long in advance of logs which were to go into the Penobscot boom. E. B. Waite testified that the men commenced driving the logs out of the stream in April, and that they were rafted at the mouth of the stream and run down Penobscot river. On June 8, 1896, the logs were evidently in defendants' boom at Lincoln, for they wrote the plaintiff on that day as follows: "Our scaler is now scaling these logs and we will note your claim against them." The logs were therefore at the very beginning of the manufacturing season in defendants' possession for the purpose of being manufactured.

On June 11, 1896, the defendants deprecating a lawsuit over the property and urging the plaintiff to make some settlement with the parties of whom they purchased, wrote thus: "We shall not use this wood for several months, and will agree not to use it until some time during the latter part of the coming fall or early winter, as we have a large quantity of loose logs in our booms that we must take care of." Here is a clear admission by the party itself, that it will not postpone the threatened conversion later than the late fall or early winter of 1896. And such would be the natural supposition, that a season's supply has been exhausted during the season. Such would be the ordinary course of business. Lapse of time is always a forcible factor.

When we consider, therefore, that the defendants were holding in their possession property of the plaintiff for the very purpose of manufacturing and converting it, property forcibly obtained from the plaintiff against her consent, and that it would be difficult for the plaintiff to ascertain whether and when the logs had been manufactured, a fact easily ascertainable by the defense, it would

seem reasonable to allow a jury to regard all the foregoing facts occurring in 1896 as at least prima facie proof in 1897 that the defendants were guilty of conversion of plaintiff's property, leaving the defense to rebut the presumption if it can. And if the plaintiff's presumption is wrong the defense can disprove it very easily.

*Action to stand for trial.*